UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LB STEEL, LLC, | ) | Case No. 15-35358 |
| | ) | |
| Debtor. | ) | Hearing Date:  October 27, 2015 |
| | ) | Hearing Time:  10:30 a.m. |

**OBJECTION OF CERTAIN UTILITY COMPANIES TO THE
DEBTOR'S MOTION FOR ORDER PURSUANT TO 11 U.S.C. § 366 (A)
PROHIBITING UTILITY COMPANIES FROM ALTERING, REFUSING OR
DISCONTINUING SERVICES ON ACCOUNT OF PREPETITION INVOICES AND (B)
DEEMING THE UTILITY COMPANIES ADEQUATELY ASSURED OF PAYMENT**

CenterPoint Energy Services, Inc. ("CES"), FirstEnergy Solutions Corp. ("FES"), Ohio Edison Company ("Ohio Edison") and Westar Energy, Inc. ("Westar") (collectively, the "Utilities"), by counsel, hereby object to the *Debtor's Motion For Order Pursuant To 11 U.S.C. § 366 (A) Prohibiting Utility Companies From Altering, Refusing or Discontinuing Services On Account of Prepetition Invoices and (B) Deeming the Utility Companies Adequately Assured of Payment* (the "Utility Motion"), and set forth the following:

Introduction

On October 21, 2015, the third day of the case, the Debtor filed the Utility Motion seeking to establish its own form of adequate assurance, which is a bank account containing $100,000 that the Debtor asserts equals their average monthly utility expenses (the "Utilities Service Account"). Despite the fact that Exhibit "A" to the Utility Motion reflects that the Utilities are three of the four largest utility providers, and Exhibit "A" reflects only eleven utility providers, Debtor's counsel did

not contact the Utilities regarding their requests for adequate assurance of payment prior to filing the Utility Motion. The Debtor sought and obtained a hearing on the Utility Motion on the ninth day of the case (the seven business day of the case), and only four business days' after the filing of the Utility Motion, even though the Debtor has 30 days to address the issue of adequate assurance of payment with the Utilities and the Debtor's other utility providers. In large national cases where debtors are required to deal with hundreds or even thousands of utility companies, it is understandable that a debtor would seek to establish procedures to deal with numerous utility companies instead of following the plain language and the requirements of Section 366(c) of the Bankruptcy Code. However, the Debtor's filing of the Utility Motion prior to attempting to contact the Utilities to attempt to resolve their adequate assurance of payment requests, and scheduling a hearing on the Utility Motion four business days after the Utility Motion was filed, is an unnecessary waste of the limited financial resources of the Debtor's estate.

The Debtor's Utility Motion improperly seeks to shift the Debtor's obligations under Section 366(c)(3) from modifying the amount of the adequate assurance of payment requested by the Utilities under Section 366(c)(2) to setting the form and amount of the adequate assurance of payment acceptable to the Debtor. This Court should not permit the Debtor to shift its statutory burden.

With respect to Section 366(c) of the Bankruptcy Code, it specifically defines the forms of adequate assurance of payment in Section 366(c)(1), none of which include a segregated bank account. Despite the foregoing, the Debtor seeks to have this Court approve its form of adequate assurance of payment, which is the Utilities Service Account. Even if this Court were to

improperly consider the Utilities Service Account as a form of adequate assurance of payment, the Court should reject it as an insufficient form of adequate assurance of payment for the following reasons:

    (i)    Unlike all of the identified and permissible forms of adequate assurance of payment listed in Section 366(c)(1)(A), the Utilities Service Account is not something held by the Utilities, so the Utilities have no control over: (A) when the Utilities Service Account will be terminated (The Debtor proposes (a) the termination of utility services, (b) confirmation of a plan of reorganization, or (c) the sale of all of the Debtor's assets); or (B) If the Utilities Service Account will remain in place if there is an event of a default by the Debtor on its use of cash collateral;

    (ii)    In order to access the Utilities Service Account, the Utilities would have to incur the expense to draft, file and serve a default pleading with the Court and possibly litigate the demand if the Debtor refuses to honor a request for payment from the Utilities Service Account; and

    (iii)    The Debtor is not required to replenish the Utilities Service Account following pay-outs.

The post-petition deposits sought by the Utilities in this case are the following two-month deposits: (A) CES - $73,320 (2-month); (B) FES - $8,266; (D) Ohio Edison - $9,530; and (D) Westar - $40,745. The Debtor is proposing that the Utilities Service Account contain the following estimated one-month amounts for each of the Utilities: (A) CES - $20,000; (B) Ohio Edison - $10,000; and (C) Westar - $13,000. The Debtor is not proposing that any money would

be contained on behalf of FES in the Utilities Service Account. However, since Ohio Edison bills the FES electric supply charges through Consolidated Billing, the Debtor's proposed $10,000 amount to be contained in the Utilities Service Account for Ohio Edison may include FES electric supply charges.

Based on all the foregoing, this Court should deny the Utility Motion because the amounts of the post-petition deposit requests of the Utilities are reasonable under the circumstances and should not be modified.

## Facts

1.  On Sunday, October 18, 2015 (the "Petition Date"), the Debtor commenced its case under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that is now pending with this Court. The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

2.  On October 21, 2015, the Court entered an *Interim Order Authorizing Debtor To Use Cash Collateral and Granting Adequate Protection* (the "Interim Cash Collateral Order")[Docket No. 35]. In the Budget attached to the Interim Cash Collateral Order, there are no amounts budgeted for the payment of utility expenses.

## The Utility Motion

3.  At 4:21 p.m. on October 21, 2015, the Debtor filed the Utility Motion. Even though Section 366(c) of the Bankruptcy Code provides the Debtor with thirty (30) days to provide the utilities with adequate assurance of payment and Section 366(c)(3)(A) requires that motions under Section 366(c) be set "after notice and a hearing," the Debtor has set the initial

and final hearing on the Utility Motion a mere six days from the date the Debtor filed the Utility Motion. Moreover, in all of the cases relied upon by the Debtor in paragraph 18 of the Motion for the position that relief similar to this has been granted by other courts, there was an initial hearing at the outset of the case followed by a final hearing several weeks later so that the parties were provided sufficient time to either settle the matter or prepare for a final hearing. Prior to the filing of this Objection, Utilities' counsel contacted Debtor's counsel seeking an adjournment of the October 27, 2015 hearing as to the Utilities. Debtor's counsel, however, refused to adjourn the hearing as to the Utilities. Accordingly, the Utilities object to the Utility Motion being scheduled for a final hearing on such short and improper notice.

4. In the Utility Motion, the Debtor seeks to avoid the applicable legal standards under Sections 366(c)(2) and (3) by seeking Court approval for its own form of adequate assurance of payment, which is the Utilities Service Account containing $100,000. Utility Motion at ¶¶ 7, 11. The foregoing proposal is unacceptable to the Utilities and should not be considered relevant by this Court because Sections 366(c)(2) and (3) do not allow the Debtor to establish the form or amount of adequate assurance of payment. Under Sections 366(c)(2) and (3), this Court and the Debtor are limited to modifying, if at all, the amount of the security sought by the Utilities under Section 366(c)(2).

5. The Debtor states that it "shall timely pay for post-petition Utility Services from the Utility Services Account." Utility Motion at ¶ 11(c). The foregoing statement is repeated in Section 3(c) of the proposed Order attached to the Utility Motion. The $100,000 Utility Services Account will not provide the Debtor with sufficient funds to pay the Utilities post-petition

expenses. Accordingly, if the foregoing language is not merely a typographical error and the Debtor is seeking to establish the Utility Services Account to pay the Utilities first post-petition invoices and nothing more, than the Utilities further object to the Utility Motion.

6.  The Debtor proposes to terminate the Utilities Service Account upon (a) the termination of utility services, (b) confirmation of a plan of reorganization, or (c) the sale of all of the Debtor's assets. Utility Motion at ¶ 11(d). As the Utilities bill the Debtor in arrears, the Utilities Service Account, if approved, should not be released until the Debtor confirms payment in full of its post-petition utility expenses.

7.  Furthermore, the Utility Motion does not address why this Court should consider modifying, if at all, the amounts of the Utilities' adequate assurance requests pursuant to Section 366(c)(2).

## Facts Concerning CES

8.  CES and the Debtor entered into the *Gas Sales Agreement* effective March 28, 2014 and related Transaction Confirmation dated March 28, 2014 (collectively, the "CES Contract"), whereby CenterPoint provided the Debtor with prepetition utility goods and/or services and has continued to provide the Debtor with utility goods and/or services since the Petition Date.

9.  Under billing cycle set forth in the CES Contract, the Debtor receives approximately one month of utility goods and/or services before CES issues an invoice for such charges. Once a bill is issued, the Debtor has 15 days to pay the applicable bill. If the Debtor fails to timely pay the bill, a late charge may be imposed. The CES Contract may be terminated if certain events of default occur. Accordingly, under the billing cycle set forth in the CES Contract, the Debtor could receive at least

two months of unpaid charges before CES could cease the supply of goods and/or services for a post-petition payment default.

10. CES is seeking a two-month deposit of $73,320 as adequate assurance of payment pursuant to Section 366(c) of the Bankruptcy Code.

## Facts Concerning FES

11. FES provides electric commodity to the Debtor pursuant to the *Customer Supply Agreement* and related *Fixed Price Pricing Attachments* (collectively, the "FES Contract"). FES has continued to provide the Debtor with electric commodity since the Petition Date.

12. The FES Contract provides that the Debtor agrees to pay for FES electric commodity pursuant to Consolidated Billing in accordance with the terms of the FES Contract. Pursuant to the FES Contract, the Debtor is currently billed for the FES electric commodity through Ohio Edison's bills issued to the Debtor. The Debtors agree to pay for the FES electric commodity charges in accordance with Ohio Edison's tariffs, which includes when payment is due and late payment charges. The FES Contract also provides that FES can obtain a two-month deposit from the Debtor as adequate assurance of payment.

13. FES is requesting a two-month post-petition cash deposit of $8,266 as adequate assurance of payment pursuant to Section 366(c) of the Bankruptcy Code.

## Facts Concerning the Utilities Other Than CES and FES

14. Each of the Utilities provided the Debtor with prepetition utility goods and/or services and has continued to provide the Debtor with utility goods and/or services since the Petition Date.

15. Under the Utilities' billing cycles, the Debtor receives approximately one month of utility goods and/or services before the Utility issues a bill for such charges. Once a bill is issued, the Debtor has approximately 20 to 30 days to pay the applicable bill. If the Debtor fails to timely pay the bill, a past due notice is issued and, in most instances, a late fee may be subsequently imposed on the account. If the Debtor fails to pay the bill after the issuance of the past due notice, the Utilities issue a notice that informs the Debtor that it must cure the arrearage within a certain period of time or its service will be disconnected. Accordingly, under the Utilities' billing cycles, the Debtor could receive at least two months of unpaid charges before the Utility could cease the supply of goods and/or services for a post-petition payment default.

16. In order to avoid the need to bring witnesses and have lengthy testimony regarding the Utilities regulated billing cycles, the Utilities request that this Court, pursuant to Rule 201 of the Federal Rules of Evidence, take judicial notice of the Utilities' billing cycles. Pursuant to the foregoing request and based on the voluminous size of the applicable documents, the Utilities' web site links to the tariffs and/or state laws, regulations and/or ordinances are as follows:

Ohio Edison:
https://www.firstenergycorp.com/content/customer/customer_choice/ohio_/ohio_tariffs.html

Westar:
https://www.westarenergy.com/rates-and-regulations

17. Subject to a reservation of the Utilities' right to supplement their post-petition deposit requests if additional accounts belonging to the Debtor are subsequently identified, the Utilities' post-petition deposit requests are as follows:

| Utility | No. of Accts. | Est. Prepet. Debt | Dep. Request |
|---|---|---|---|
| Ohio Edison | 1 | n/a | $9,530 (2-month) |
| Westar | 5 | $18,945.18 | $40,745 (2-month) |

## Discussion

### A. THE UTILITY MOTION SHOULD BE DENIED AS TO THE UTILITIES.

Sections 366(c)(2) and (3) of the Bankruptcy Code provide:

> (2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility;
>
> (3)(A) On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).

As set forth by the United States Supreme Court, "[i]t is well-established that 'when the statute's language is plain, the sole function of the courts--at least where the disposition required by the text is not absurd--is to enforce it according to its terms.'" *Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004) (*quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*, 530 U.S. 1, 6, 120 S. Ct., 1942, 147 L. Ed. 2d 1 (2000)). *Rogers v. Laurain (In re Laurain)*, 113 F.3d 595, 597 (6th Cir. 1997) ("Statutes . . . must be read in a 'straightforward' and 'commonsense' manner."). A plain reading of Section 366(c)(2) makes clear that a debtor is required to provide adequate assurance of payment satisfactory to its utilities on or within thirty (30) days of the filing of the petition. If a debtor believes the **amount** of the utility's request needs to be modified, then the debtor can file a motion under Section 366(c)(3) requesting the court to modify the **amount** of the utility's request under Section

366(c)(2).

In this case, the Debtor filed the Utility Motion to improperly shift the focus of its obligations under Section 366(c)(3) from modifying the amount of the adequate assurance of payment requested under Section 366(c)(2) to setting the form and amount of the adequate assurance of payment acceptable to the Debtor. Accordingly, this Court should not reward the Debtor for its failure to comply with the requirements of Section 366(c) and deny the Utility Motion as to the Utilities.

1. **The Debtor's Proposed Utilities Service Account Is Not Relevant and Even If It Is Considered, It Is Unsatisfactory Because It Does Not Provide the Utilities with Adequate Assurance of Payment.**

This Court should not even consider the Utilities Service Account as a form of adequate assurance of payment because: (1) It is not relevant because Section 366(c)(3) provides that a debtor can only modify "the amount of an assurance of payment under paragraph (2)"; and (2) The Utilities Service Account is not a form of adequate assurance of payment recognized by Section 366(c)(1)(A). Moreover, even if the Court were to consider the Utilities Service Account, the Utilities Service Account is an improper and otherwise unreliable form of adequate assurance of future payment for the following reasons:

(i) Unlike the statutory approved forms of adequate assurance of payment, the Utilities Service Account is not something held by the Utilities. Accordingly, the Utilities have no control over how long the Utilities Service Account will remain in place.

(ii) In order to access the Utilities Service Account, the Utilities may have to incur the expense to draft, file and serve a default pleading with the Court and possibly litigate the demand if the Debtor refuses to honor a Disbursement Request.

(iii) It is underfunded from the outset because the Utilities issue monthly bills and by the time a default notice is issued the Debtor will have used at least 45 to 60 days of commodity or service.

(iv) The Debtor would not be required to replenish the Utilities Service Account following pay-outs.

(v) The Utilities Service Account could be closed before final post-petition charges are paid.

Accordingly, the Court should not approve the Utilities Service Account as adequate assurance to the Utilities because the Utilities Service Account is: (a) not the **form** of adequate assurance requested by the Utilities; (b) not a form recognized by Section 366(c)(1)(A); and (c) an otherwise unreliable form of adequate assurance.

2. **The Utility Motion Should Be Denied As To the Utilities Because the Debtor Has Not Set Forth Any Basis For Modifying the Utilities' Requested Deposits.**

In the Utility Motion, the Debtor fails to address why this Court should modify the amount of the Utilities' requests for adequate assurance of payment. Under Section 366(c)(3), the Debtor has the burden of proof as to whether the amounts of the Utilities' adequate assurance of payment requests should be modified. *See In re Stagecoach Enterprises, Inc.*, 1 B.R. 732, 734 (Bankr. M.D. Fla. 1979) (holding that the debtor, as the petitioning party at a Section 366 hearing, bears the burden of proof). However, the Debtor does not provide the Court with any evidence or factually supported documentation to explain why the amount of the Utilities' adequate assurance requests should be modified. Accordingly, the Court should deny the relief requested by Debtor in the Utility Motion and require the Debtor to comply with the requirements of Section 366(c) with respect to the Utilities.

B.     **THE COURT SHOULD ORDER THE DEBTOR TO PROVIDE THE ADEQUATE ASSURANCE OF PAYMENT REQUESTED BY THE UTILITIES PURSUANT TO SECTION 366 OF THE BANKRUPTCY CODE.**

Section 366(c) was amended to overturn decisions such as *Virginia Electric and Power Company v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997), that held that an administrative expense, without more, could constitute adequate assurance of payment in certain cases. Section 366(c)(1)(A) specifically defines the forms that assurance of payment may take as follows:

> (i) a cash deposit;
> (ii) a letter of credit;
> (iii) a certificate of deposit;
> (iv) a surety bond;
> (v) a prepayment of utility consumption; or
> (vi) another form of security that is mutually agreed upon between the utility and the debtor or the trustee.

Section 366 of the Bankruptcy Code was enacted to balance a debtor's need for utility services from a provider that holds a monopoly on such services, with the need of the utility to ensure for itself and its rate payers that it receives payment for providing these essential services. *See In re Hanratty*, 907 F.2d 1418, 1424 (3d Cir. 1990). The deposit or other security "should bear a reasonable relationship to expected or anticipated utility consumption by a debtor." *In re Coastal Dry Dock & Repair Corp.*, 62 B.R. 879, 883 (Bankr. E.D.N.Y. 1986). In making such a determination, it is appropriate for the Court to consider "the length of time necessary for the utility to effect termination once one billing cycle is missed." *In re Begley*, 760 F.2d 46, 49 (3d Cir. 1985).

Although the billing cycles for each of the Utilities are slightly different, they all bill the Debtor on a monthly basis for the charges already incurred by the Debtor in the prior month.

Each Utility then provides the Debtor with a certain period of time to pay the bill, the timing of which is set forth in applicable state laws, tariffs, regulations and/or contract. Based on the foregoing state or contract-mandated billing cycles, the minimum period of time the Debtor could receive service from the Utilities before termination of service for non-payment of post-petition bills is approximately two (2) months. Moreover, even if the Debtor timely pays its post-petition utility bills, the Utilities still have potential exposure of 45 to 60 days based on their billing cycles.

Despite the fact that the Utilities continue to provide the Debtor with crucial post-petition utility goods/services on the same generous terms that were provided prepetition, with the possibility of non-payment, the Debtor is seeking to deprive the Utilities of adequate security for which they are entitled to for continuing to provide the Debtor with post-petition utility goods/services. Against this factual background, it is reasonable for the Utilities to seek and be awarded the full security they have requested herein.

WHEREFORE, the Utilities respectfully request that this Court enter an order:

1.    Denying the Utility Motion as to the Utilities or adjourning the Utility Motion to a hearing date that provides the Utilities with sufficient time to prepare and bring witnesses, if necessary;

2.    Awarding the Utilities the post-petition adequate assurance of payment pursuant to Section 366 in the amount and form satisfactory to the Utilities, which are the form and amounts requested herein; and

3.    Providing such other and further relief as the Court deems just and appropriate.

Dated:        October 26, 2015          CARLSON DASH LLC.

/s/ Kurt M. Carlson
Kurt M. Carlson
Jeffrey E. Altshul
216 South Jefferson Street, Suite 504
Chicago, IL 60661
Telephone: (312) 382-1600
E-mail: KCarlson@carlsondash.com
E-mail: jaltshul@carlsondash.com

and

Russell R. Johnson III
John M. Craig
Law Firm of Russell R. Johnson III, PLC
2258 Wheatlands Drive
Manakin-Sabot, Virginia 23103
Telephone: (804) 749-8861
Facsimile: (804) 749-8862
E-mail: russj4478@aol.com

*Counsel for CenterPoint Energy Services, Inc., FirstEnergy Solutions Corp., Ohio Edison Company and Westar Energy, Inc.*

83732