# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 15-35358 |
| LB STEEL, LLC, | ) | |
| | ) | Honorable Janet S. Baer |
| Debtor. | ) | |

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on **November 9, 2015** at **10:00 a.m.**, the undersigned

shall appear before the Honorable Janet S. Baer, or any judge sitting in her stead, in Courtroom

615 of the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street,

Chicago, Illinois, and then and there present *Debtor's Motion For Orders: (A)(I) Approving*

*Bidding Procedures in Connection With the Sale of All Or Substantially All Assets of the Debtor,*

*(II) Scheduling an Auction and Hearing to Consider the Sale of Assets, and (III) Approving the*

*Form and Manner of Notice of the Sale; and (B)(I) Authorizing and Approving the Sale of Assets*

*Free and Clear of Liens, Claims, Encumbrances, and Interests, and (II) Authorizing and*

*Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and*

*(C) Granting Related Relief*, at which time you may appear.

Dated: November 2, 2015                    Respectfully submitted,

**LB STEEL, LLC**,


By: */s/ Daniel A. Zazove*
PERKINS COIE LLP
Daniel A. Zazove
David J. Gold
131 S. Dearborn Street, Suite 1700
Chicago, Illinois 60603-5559
Telephone:  (312) 324-8400
Facsimile:  (312) 324-9400

*Proposed Attorneys for the Debtor*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 15-35358 |
| LB STEEL, LLC, | ) | |
| | ) | Honorable Janet S. Baer |
| Debtor. | ) | |

**DEBTOR'S MOTION FOR ORDERS: (A)(I) APPROVING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF ALL OR SUBSTANTIALLY ALL ASSETS OF THE DEBTOR, (II) SCHEDULING AN AUCTION AND HEARING TO CONSIDER THE SALE OF ASSETS, AND (III) APPROVING THE FORM AND MANNER OF NOTICE OF THE SALE; AND (B)(I) AUTHORIZING AND APPROVING THE SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, AND (II) AUTHORIZING AND APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF**

LB Steel, LLC (the "Debtor") submits this motion, pursuant to sections 363, 365, 503 and 1146 of the Bankruptcy Code and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure, for entry of orders: (a)(i) approving bidding procedures in connection with the sale of all or substantially all its assets, (ii) scheduling a hearing to consider the sale of assets, and (iii) approving the form and manner of notice of the sale; (b)(i) authorizing and approving the sale of assets free and clear of liens, claims, encumbrances and interests, and (ii) approving the assumption and assignment of executory contracts and unexpired leases incident to the sale; and (c) granting related relief.  In support of this Motion, the Debtor states as follows

## JURISDICTION

1.      This Court exercises jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of this case in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are Bankruptcy Code sections 363, 365, 503 and 1146, as supplemented by Bankruptcy Rules 2002, 6004, 6006 and 9014.

## BACKGROUND

2.      On October 18, 2015, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor is operating its business and managing its properties as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      The Debtor's business and history are more fully set forth in the Declaration of Michael Goich filed on the Petition Date.

4.      In light of the Debtor's operating limitations and debt structure, the Debtor has determined that the value of its estate is best maximized and preserved by a going-concern sale pursuant to section 363 of the Bankruptcy Code.  The Debtor intends to retain an investment banker to conduct an orderly marketing process and a going-concern sale of substantially all of its business assets (the "Purchased Assets") in one or more sale transactions pursuant to section 363 of the Bankruptcy Code.

## SUMMARY OF THE RELIEF REQUESTED

5.      Pursuant to sections, 363, 365 and 503 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9014, the Debtor seeks the Court's approval of: (a) the sale of the Purchased Assets free and clear of all liens, claims encumbrances and interests (collectively, "Interests"); (b) the approval of proposed bidding, auction and notice procedures for the solicitation and consideration of competing offers for the Purchased Assets ("Bidding Procedures," annexed as Schedule 1 to the Bidding Procedures Order); (c) fixing certain dates and deadlines, subject to modification; (d) authorization to pay or reserve sufficient sale proceeds required to pay the accrued, allowed Administrative Claims that are unpaid as of the closing of the sale, plus a reasonable amount of wind-down costs, from the sale proceeds; and (e) the assumption, assignment and/or transfer of certain executory contracts to the Successful Bidder.

6.      More specifically, the Debtor requests that the Court enter the following orders:

(a) **The Bidding Procedures Order**: An order in substantially the form attached: (i) approving the Bidding Procedures; (ii) approving the notice (the "Notice of Sale Hearing") establishing the dates, times, and locations of the deadline to bid for the Purchased Assets, the auction of the Purchased Assets (the "Auction") in the event that more than one offer is received for the Purchased Assets and the sale hearing for the Purchased Assets (the "Sale Hearing") pursuant to the dates proposed in the Bidding Procedures Order; and (iii) approving the notice of the Debtor's intent to assume, assign and/or transfer to the Successful Bidder or Back-Up Bidder, the contracts, commitments, leases, licenses, permits, purchase orders, and other executory contracts and unexpired leases (collectively, the "Executory Contracts and Unexpired Leases"), and the corresponding cure amounts required to be paid in connection with such assumption, assignment and/or transfer.

(b) **The Sale Order**: Following an Auction, the entry of a sale order: (i) approving the sale of the Purchased Assets free and clear of Interests; and (ii) approving the assumption, assignment, or transfer of Executory Contracts and Unexpired Leases to the Successful Bidder or Back-Up Bidder under the Bidding Procedures.

7.     As set forth in the Bidding Procedures Order, the Debtor requests that the Court establish the following dates and deadlines, subject to modification:

(a) Cure Amount/Assignment Objection Deadline: By the later of (a) **December 18, 2015 at 4:00 p.m.** (prevailing Central Time) or (b) ten (10) days from service of a Supplemental Notice of Assumption and Assignment (as defined herein), as the deadline to object to the cure amounts listed in the Notice of Assumption and Assignment;

(b) Bid Deadline: **January 4, 2016 at 12:00 noon** (prevailing Central Time), as the deadline by which all bids for some or all of the Purchased Assets (as well as the deposit and all other required documentation under the Bidding Procedures for Qualified Bidders) must be actually received pursuant to the Bidding Procedures;

(c) Auction:   **January 6, 2016 at 10:00 a.m.** (prevailing Central Time), as the date and time the auction, if one is needed (the "Auction"), will be held at the offices of Perkins Coie LLP;

(d) Sale Objection Deadline: **January 7, 2016 at 4:00 p.m.** (prevailing Central Time) as the deadline to object to the Sale transactions;

(e) Adequate Assurance Objection Deadline: **January 8, 2016 at 10:00 a.m.** (prevailing Central Time) at the Sale Hearing as the deadline to object to the assignment of Contracts solely on the issue of whether the Successful Bidder can provide adequate assurance of future performance; and

(f) Sale Hearing: **January 8, 2016 at 10:00 a.m.** (prevailing Central Time), as the

date and time for the hearing to approve the Sale (the "Sale Hearing").

8.      The Debtor seeks to retain the right to designate a stalking horse bidder, subject to the Court's approval, if, in its sound business judgment, an appropriate stalking horse bidder can be identified among the Qualified Bidders who submit bids prior to the Bid Deadline.

9.      The Debtor believes that each day spent in chapter 11 increases the risk of business loss and value deterioration.  Moreover, the Debtor believes that the value of its operating assets will be maximized through a going-concern sale and not through a restructuring of the Debtor's debts and equity.  Absent a sale pursuant to the procedures and timelines proposed, the Debtor believes that the going-concern value of the Purchased Assets will be compromised and that its continued viability will be at significant risk.

10.     The Debtor reserves the right to modify the relief requested in this Motion, including the proposed Bidding Procedures, prior to or at the hearing.  The Debtor reserves the right to file and seek confirmation of a liquidating plan of reorganization pursuant to Section 1123 of the Bankruptcy Code.

## BIDDING PROCEDURES AND RELEVANT NOTICES

### A.    Bidding Procedures

11.     The Debtor believes the proposed Bidding Procedures annexed as Schedule 1 to the Bidding Procedures Order will maximize the realizable value of the Purchased Assets for the benefit of its estate, creditors and other interested parties.  The Bidding Procedures contemplate an auction process pursuant to which bids for the Purchased Assets will be subject to higher or otherwise better offers.

12.     As more fully described below and in the Bidding Procedures, only Qualified Bidders who timely submit Qualified Bids will be eligible to participate in the Auction.  The Debtor's secured lender may submit a credit bid, which shall be deemed a Qualified Bid.

Specifically, the Bidding Procedures provide, in relevant part, as follows:[1]

(a) <u>Assets to be Sold</u>.  The Purchased Assets generally constitute all of the operating assets of LB Steel, LLC, including all real property owned by the Debtor, along with certain real property leases.  The Debtor will offer to sell the Purchased Assets, together or separately, to one of more bidders.  The Debtor shall consider bids for either all or a significant part of the Purchased Assets.

(b) <u>Participation Requirements</u>.  In order to participate in the bidding process or otherwise be considered for any purpose hereunder, a person interested in some or all of the Purchased Assets (a "Potential Bidder") must first deliver the following materials to the Debtor and its counsel:

1. an executed confidentiality agreement in form and substance satisfactory to the Debtor and its counsel; and

2. For a party to be considered a Potential Bidder, such party must demonstrate to the Debtor a reasonable likelihood of an ability to close on a purchase of the Seller Assets in a timely manner in accordance with the terms of these Bidding Procedures.  The Debtor may, in its discretion and in the exercise of its business judgment, require that such parties demonstrate the legitimacy of their interest by, among other things, requiring them to provide proof of access to funds and/or committed capital sufficient to finance the proposed transaction.  The Debtor's secured lender shall be deemed a Qualified Bidder upon submission of a credit bid, which shall be deemed a Qualified Bid.

(c) <u>Qualified Bid</u>.  The Debtor, in consultation with its secured lender, and any statutory committee appointed in this case, shall determine whether a bid qualifies as a "Qualified Bid."  To constitute a Qualified Bid, a bid must be a written irrevocable offer from a Qualified Bidder and:

1. include a cover letter identifying whether the Qualified Bidder is interested in purchasing some or all of the Purchased Assets.  If the Qualified Bidder is submitting a bid only with respect to certain assets, such cover letter must specify which assets the Qualified Bidder is seeking to purchase and whether or not such bid is contingent on purchasing all of the identified assets;

2. state that the Qualified Bidder offers to consummate the sale pursuant a Purchase Agreement substantially in the form of the Purchase Agreement to be provided by the Debtor prior to the Bid Deadline (the "Marked Purchase Agreement").  If any bid is conditioned on the assumption and assignment of

---

[1] The following description of the Bidding Procedures is a summary of the terms set forth in the Bidding Procedures annexed to the Bidding Procedures Order as Schedule 1.  Capitalized terms used but not defined in this section have the meanings ascribed to them in the Bidding Procedures.  To the extent that this summary differs in any way from the terms set forth in the Bidding Procedures, the terms of the Bidding Procedures shall control.

executory contracts and/or unexpired leases, then such potential bidder shall be required to provide evidence of its ability to provide adequate assurance of future performance of such contracts or leases along with the bid;

3. be an all-cash bid;

4. contain a list of the Debtor's executory contracts and unexpired leases with respect to which the bidder seeks assignment from the Debtor;

5. confirm that the offer shall remain open and irrevocable as provided below;

6. enclose a clean signed copy of the proposed Marked Purchase Agreement and a blacklined copy to the Purchase Agreement proposed by the Debtor;

7. be accompanied by a certified or bank check or wire transfer in an amount equal to the greater of $1,000,000 and five percent (5%) of the proposed purchase price set forth in the bid as a minimum good faith deposit (the "Minimum Deposit"), which Minimum Deposit shall be used to fund a portion of the purchase price provided for in the bid;

8. not be conditioned on obtaining financing or the outcome of any due diligence by the Qualified Bidder; and

9. fully disclose the identity of each entity that will be bidding for the Purchased Assets or otherwise participating in connection with such bid, and the complete terms of any such participation.

(d) <u>Bid Deadline and Submission</u>. All bids must be received no later than **12:00 noon (prevailing Central time) on January 4, 2016** (the "<u>Bid Deadline</u>") by to: (i) counsel to the Debtor, Perkins Coie LLP, 131 S. Dearborn St., Suite 1700, Chicago, Illinois 60603, Attn: Dan Zazove and David Gold; (ii) the Debtor's investment banker, Livingstone Partners, LLC, 443 North Clark Street, Chicago, Illinois 60654, Attn: Joseph Greenwood; (iii) counsel to MB Financial Bank, N.A., Arnstein & Lehr LLP, 120 South Riverside Plaza, Suite 1200, Chicago, IL 60606, Attn: Barry Chatz and David Golin; (iv) the office of the United States Trustee (Region 11), 219 S. Dearborn St., Suite 873, Chicago, Illinois 60604, Attn: Kimberly Bacher; and (v) counsel for the Official Committee of Unsecured Creditors, Duane Morris LLP, 190 S. LaSalle St., #3700, Chicago, IL 60603, Attn: Rosanne Ciambrone (collectively, the "Notice Parties"). After the Bid Deadline, each Qualified Bidder that submits a Qualified Bid will be provided with a copy of any other Qualified Bid(s).

(e) <u>Auction</u>. If more than one Qualified Bid by a Qualified Bidder is received by the Bid Deadline, an auction (the "<u>Auction</u>") with respect to a sale of the Purchased Assets shall take place on **January 6, 2016 at 10:00 a.m. (prevailing Central time)** at the offices of Perkins Coie LLP, 131 S. Dearborn St., Suite 1700, Chicago, Illinois 60603, or at such other place and time as the Debtor shall notify all Qualified Bidders, any statutory committee appointed in this case, and other

invitees.  If, however, no such Qualified Bids are received by the Bid Deadline, then the Auction will not be held.

(f)  <u>Auction Rules.</u>

1.  Only Qualified Bidders who have submitted a Qualified Bid and their authorized representatives will be eligible to participate at the Auction.  The Debtor's secured lender shall be deemed a Qualified Bidder upon submission of a credit bid, which shall be deemed a Qualified Bid.  Only Qualified Bidders who have submitted a Qualified Bid will be permitted to increase their bids at the Auction.  The bidding at the Auction shall start at the purchase price stated in the highest or otherwise best Qualified Bid (or combination of Qualified Bids) as disclosed to all Qualified Bidders prior to commencement of the Auction (the "Starting Qualified Bid"), and then continue in minimum increments to be announced at the Auction (the "Overbid Increment").  The Debtor shall not consider any subsequent bid at the Auction unless it exceeds the previous highest bid by at least the Overbid Increment; provided, however, that in the event the Debtor selects a combination of Qualified Bids to serve as the Starting Qualified Bid, the Debtor reserves the right to determine an appropriate Overbid Increment for each asset or lot of assets to be sold at the Auction.  During the course of the Auction, the Debtor shall inform each participant which Qualified Bid(s) reflects, in the Debtor's view, the highest or otherwise best offer or combination of offers for the Purchased Assets.

2.  <u>Adjournment of Auction.</u>  The Auction may be adjourned as the Debtor deems appropriate.  Reasonable notice of such adjournment and the time and place for the resumption of the Auction shall be given to all Qualified Bidders that have submitted a Qualified Bid and counsel to any statutory committee appointed in this case.

3.  Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

4.  Bidding at the Auction will be transcribed or videotaped.

(g)  <u>Other Terms.</u>  All Qualified Bids, the Auction, and the Bidding Procedures are subject to such additional terms and conditions as are announced by the Debtor and are not inconsistent with the Bidding Procedures Order.  At the conclusion of the Auction, the Debtor shall announce the bid or combination of bids made pursuant to the Bidding Procedures Order that represents the highest or otherwise best offer for all of the Purchased Assets (the "Successful Bid").  Prior to the entry of the Sale Order, the Debtor shall announce the identity of the Qualified Bidder or combination of Qualified Bidders who submitted the Successful Bid at the Auction (the "Successful Bidder") and announce its intention to either (i) pursue a transaction with the Successful Bidder, or (ii) not proceed with a sale to the Successful Bidder.  If an Auction is held, the Debtor shall be deemed to have

accepted a Qualified Bid only when (i) such bid is declared the Successful Bid at the Auction, (ii) definitive documentation has been executed in respect thereof, and (iii) the Court has approved the Sale to the Successful Bidder.   Such acceptance by the Debtor is conditioned upon approval by the Court of the Successful Bid and the entry of an order approving such Successful Bid.

(h)  <u>Irrevocability of Certain Bids</u>.  The Successful Bid shall remain irrevocable in accordance with the terms of the purchase agreement executed by the Successful Bidder.  The bid of the Qualified Bidder or combination of Qualified Bidders (the "Back-Up Bidder") that submits the next highest or otherwise best bid or combination of bids (the "<u>Back-Up Bid</u>") shall be irrevocable until the earlier of: (i) 15 days after entry of the Sale Order approving the Successful Bid; (ii) closing of the sale to the Successful Bidder; and (iii) such date as the Debtor affirms in writing that the Debtor does not intend to proceed with a sale to the Successful Bidder.  Following the entry of the Sale Order, if the Successful Bidder fails to consummate the Sale because of a breach or failure to perform on the part of the Successful Bidder, the Back-Up Bid will be deemed to be the new Successful Bid, and the Debtor will be authorized, but not required, to consummate the Sale with the Back-Up Bidder without further order of the Court.   In such case, the defaulting Successful Bidder's Minimum Deposit shall be forfeited to the Debtor and the Debtor shall have the right to seek any and all other remedies and damages from the defaulting Successful Bidder.

(i)  <u>Sale Hearing</u>.   The Court shall conduct a hearing to approve the sale of the Debtor's assets on **January 8, 2016 at 10:00 a.m.**

(j)  <u>Return of Deposit</u>.  Except as otherwise provided in this paragraph with respect to any Successful Bid and any Back-Up Bid, the Minimum Deposits of all Qualified Bidders that submitted such a deposit under the Bidding Procedures shall be returned upon or within five (5) business days after the conclusion of the Auction. The Minimum Deposit of the Successful Bidder shall be held until the closing of the Sale of the Purchased Assets and applied in accordance with the Successful Bid.  The Minimum Deposit of the Back-Up Bidder shall be returned upon or within the earlier of 15 days after the date of entry of the Sale Order (the "Outside Back-Up Date") or the closing of the Sale of the Purchased Assets to the Successful Bidder.

(k)  <u>Failure to Close</u>.  If the Successful Bidder fails to consummate the transaction in accordance with the terms of the purchase agreement executed by the Successful Bidder by the closing date contemplated in the purchase agreement agreed to by the parties for any reason, the Debtor shall: (i) retain the Successful Bidder's Minimum Deposit as partial liquidated damages; (ii) maintain the right to pursue all other available remedies, whether legal or equitable; and (iii) be free to consummate the proposed transaction with the Back-Up Bidder at the highest price bid by the Back-Up Bidder at the Auction, without the need for an additional hearing or Order of the Court.

(l) <u>Reservation of Rights</u>.  Except as otherwise provided in the Bidding Procedures Order, the Debtor reserves the right as it may reasonably determine to be in the best interests of its estate, subject to conformity with the Bidding Procedures, to: (i) determine, in consultation with the Debtor's secured lender and any official committee, which bidders are Qualified Bidders; (ii) determine which bids are Qualified Bids; (iii) determine which Qualified Bid or combination of Qualified Bids is the highest and best proposal and which is the next highest and best proposal; (iv) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (c) contrary to the best interests of the Debtor and its estate; (v) remove some of the Purchased Assets from the Auction; (vi) waive terms and conditions set forth herein with respect to all potential bidders; (vii) impose additional terms and conditions with respect to all potential bidders; (viii) extend the deadlines set forth herein; (ix) adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; (x) modify the Bidding Procedures, as the Debtor may determine to be in the best interests of its estate, or to withdraw the Motion at any time with or without prejudice; and (xi) conduct the Auction in such manner and on such terms as the Debtor believes, in consultation with counsel to the Official Committee of Unsecured Creditors, is in the best interests of the Debtor and its estate.

(m) <u>Expenses</u>.  Except as otherwise ordered by the Court, all bidders shall bear their own expenses in connection with the proposed sale, whether or not such sale is ultimately approved.

13.    The Debtor believes that the Bidding Procedures are fair and reasonable, are designed to maximize the sale value of the Purchased Assets, and are not likely to dissuade any serious potential bidder from bidding in a manner permitted under the preceding paragraph.

**B.    Notice of Auction and Sale Hearing**

14.    The Debtor requests that the Court schedule the Sale Hearing on January 8, 2016. The Debtor further requests that the objection deadline, with respect to the sale of the Purchased Assets, be on January 7, 2016 at 4:00 p.m. (prevailing Central Time).

15.    Within three (3) business days after entry of the Bidding Procedures Order, the Debtor will cause: (a) a notice in substantially the form annexed as Schedule 2 to the Bidding Procedures Order (the "Notice of Auction and Sale Hearing"); and (b) a copy of the Bidding Procedures Order to be sent by first class mail postage prepaid and/or Electronic Bankruptcy

Noticing, to the following: (i) the Office of the United States Trustee; (ii) counsel for any

statutory committee in this case, if and when appointed; (iii) the Debtor's prepetition secured

lender, MB Financial Bank, N.A.; (iv) all taxing authorities and other governmental agencies

having jurisdiction over any of the Purchased Assets, including the Internal Revenue Service; (v)

all parties that have requested or that are required to receive special notice pursuant to

Bankruptcy Rule 2002; (vi) all persons known or reasonably believed to have asserted any lien,

claim, encumbrance, right of first refusal, or other Interest in or upon any of the Purchased

Assets; (vii) all non-debtor parties to the Executory Contracts and Unexpired Leases and any

parties who are known to claim interests therein; (viii) all persons known or reasonably believed

to have expressed an interest in acquiring some or all of the Purchased Assets within the last six

months; (ix) the Attorneys General in the States where the Purchased Assets are located; (x) the

United States Environmental Protection Agency; and (xi) any applicable state environmental

agency.[2]  In addition to the foregoing, (a) electronic notification of this Motion, the Bidding

Procedures Order and the Notice of Auction and Sale Hearing also will be posted on the Court's

electronic case filing (ECF) website, http://ecf.ilnb.uscourts.gov; and (b) on or before three (3)

business days after entry of the Bidding Procedures Order, the Debtor will: (i) serve the Notice

of Auction and Sale Hearing on all known creditors of the Debtor; and (ii) subject to applicable

submission deadlines, publish the Notice of Auction and Sale Hearing once in one or more

publications the Debtor deems appropriate.

16.    To facilitate the sale of the Purchased Assets and the assumption, assignment

and/or transfer of the Executory Contracts and Unexpired Leases, the Debtor shall serve a notice

---

[2] The Notice of Auction and Sale Hearing will direct parties to contact the Debtor's counsel for more
information and will provide that any party in interest that wishes to obtain a copy of any related
document, subject to any necessary confidentiality agreement, may make a request in writing as specified
in the Notice of Auction and Sale Hearing.

of potential assumption, assignment and/or transfer of the Executory Contracts and Unexpired

Leases in substantially the form annexed as Schedule 3 to the Bidding Procedures Order (the

"Notice of Assumption and Assignment") on all non-debtor parties to the Executory Contracts

and Unexpired Leases, on or before December 4, 2015 by first class mail.  If the Debtor

identifies additional executory contracts or unexpired leases that might be assumed by the Debtor

and assigned to the Successful Bidder or not set forth in the original Notice of Assumption and

Assignment, the Debtor will promptly send a supplemental notice (a "Supplemental Notice of

Assumption and Assignment") to the applicable counterparties to such additional executory

contracts and unexpired leases.

       17.     In the Notice of Assumption and Assignment, the Debtor will identify its

calculation of any cure amounts that the Debtor believes must be paid to cure all defaults under

the Executory Contracts and Unexpired Leases (the "Cure Amounts").  If no amount is listed on

the Notice of Assumption and Assignment with respect to an Executory Contract or Unexpired

Lease, the Debtor believes that there is no Cure Amount applicable to such Executory Contract

or Unexpired Lease.  The Debtor requests that unless the non-debtor party to an Executory

Contract or Unexpired Lease files an objection (the "Cure Amount/Assignment Objection") to

(a) their scheduled Cure Amount and/or (b) to the proposed assumption, assignment and/or

transfer of such Executory Contract or Unexpired Lease by the later of (i) 4:00 p.m. (prevailing

Central time) on December 18, 2015 or (ii) ten (10) days after service of the relevant

Supplemental Notice of Assumption and Assignment (such later date, the "Cure/Assignment

Objection Deadline") and serves a copy of the Cure Amount/Assignment Objection so as to be

received no later than 4:00 p.m. (prevailing Central Time) on the Cure/Assignment Objection

Deadline by: (i) counsel to the Debtor, Perkins Coie LLP, 131 S. Dearborn St., Suite 1700,

Chicago, Illinois 60603, Attn: Dan Zazove and David Gold; (ii) counsel to MB Financial Bank, N.A., Arnstein & Lehr LLP, 120 South Riverside Plaza, Suite 1200, Chicago, IL 60606, Attn: Barry Chatz and David Golin; (iii) the office of the United States Trustee (Region 11), 219 S. Dearborn St., Suite 873, Chicago, Illinois 60604, Attn: Kimberly Bacher; and (iv) counsel to the Official Committee of Unsecured Creditors, Duane Morris LLP, 190 S. LaSalle St., #3700, Chicago, IL 60603, Attn: Rosanne Ciambrone (collectively, the "Notice Parties"); then such non-debtor party should (i) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Executory Contract and Unexpired Lease and the Debtor shall be entitled to rely solely upon the Cure Amount, and (ii) if the Executory Contract or Unexpired Lease is identified as a Purchased Asset by the Successful Bidder and/or Back-Up Bidder, be deemed to have consented to the assumption, assignment and/or transfer of such Executory Contract and Unexpired Lease and shall be forever barred and estopped from asserting or claiming against the Debtor, the Successful Bidder or Back-Up Bidder or any other assignee of the relevant Executory Contract or Unexpired Lease that any additional amounts are due or defaults exist, or conditions to assumption, assignment and/or transfer must be satisfied, under such Executory Contract or Unexpired Lease. Notwithstanding the foregoing, as provided below, each non-debtor party shall retain the right to object to the assumption, assignment or transfer of its Executory Contract and Unexpired Lease, based solely on the issue of whether the Successful Bidder or Back-Up Bidder can provide adequate assurance of future performance as required by section 362 of the Bankruptcy Code.

18.     The Debtor also requests that any objections challenging a Cure Amount must set forth the cure amount being claimed by the objecting party (the "Claimed Cure Amount") with appropriate documentation in support thereof.  Upon receipt of a Cure Amount/Assignment

Objection, the Debtor requests that it be granted the authority, but not direction, to resolve any

Cure Amount/Assignment Objection by mutual agreement with the objecting counterparty to any

Executory Contract or Unexpired Lease without further order of the Court.  In the event that the

Debtor and any objecting party are unable to consensually resolve any Cure Amount/Assignment

Objection no later than January 5, 2016, the Debtor requests that the Court resolve such Cure

Amount/Assignment Objection at the Sale Hearing.

19.    The Debtor, the Successful Bidder or the Back-Up Bidder, as the case may be,

may determine to exclude any Executory Contract or Unexpired Lease from the list of Purchased

Assets no later than one (1) business day prior to the Sale Hearing, or, if the Court determines at

any hearing on a Cure Amount/Assignment Objection that the applicable cure amount for such

contract is greater than the Cure Amount proposed by the Debtor, no later than five (5) business

days following such hearing.  The non-debtor party or parties to any such excluded contract or

lease will be notified of such exclusion by written notice mailed within two (2) business days of

such determination.

20.    The Debtor shall serve notice of the identities of the Qualified Bidders on or

before January 5, 2016 to the non-debtor parties to the Executory Contracts and Unexpired

Leases.  The Debtor proposes that the non-debtor parties to the Executory Contracts and

Unexpired Leases have until the Sale Hearing (the "Adequate Assurance Objection Deadline") to

object to the assumption, assignment and/or transfer of such Executory Contract and Unexpired

Lease solely on the issue of whether the Successful Bidder can provide adequate assurance of

future performance as required by section 365 of the Bankruptcy Code.

## <u>AUTHORITY FOR REQUESTED RELIEF</u>

**C.    The Sale Of The Purchased Assets Is Within The Sound Business Judgment Of The Debtor And Should be Approved**

21.    Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Section 363 does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan.  However, courts have required that the decision to sell assets outside the ordinary course of business be based upon the sound business judgment of the debtor.  *See* 3 COLLIER ON BANKRUPTCY ¶ 363.02[4] (16th ed. 2012); *see also In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) (requiring "articulated business justification" for sale, adequate notice, and the availability of a hearing to approve sale under § 363(b)); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (*citing In re Schipper*); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp., (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999); *In re Zeigler*, 320 B.R. 362, 381 (Bankr. N.D. Ill. 2005); *In re U.S. Airways Grp., Inc.*, 287 B.R. 643, 645 (Bankr. E.D. Va. 2002).

22.    In this case, the Debtor submits that the decision to proceed with the Sale of the Purchased Assets and the Bidding Procedures is based upon sound business judgment and should be approved.  A debtor's showing of a sound business purpose need not be unduly exhaustive but, rather, a debtor is "simply required to justify the proposed disposition with sound business reasons."  *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984).  Whether or not there are sufficient business reasons to justify a transaction depends upon the facts and circumstances of each case.  *See Lionel*, 722 F.2d at 1071; *Montgomery Ward*, 242 B.R. at 155

(approving funding of employee incentive and severance program; business purpose requirement fulfilled because stabilizing turnover rate and increasing morale were necessary to successful reorganization).

23.     The Debtor submits that ample business justification exists to sell the Purchased Assets pursuant to the Bidding Procedures.  The sale of the Purchased Assets presents the best opportunity to maximize the value for the estate in light of the need to manage and transition the Purchased Assets to a buyer.  In addition, the Debtor believes that the Bidding Procedures are the best method by which they can obtain the best price for the Purchased Assets and provide interested parties with accurate and reasonable notice of the Sale.  The Bidding Procedures will allow the Debtor to conduct the Auction in a controlled, fair and open fashion that will encourage participation by financially capable bidders who demonstrate the ability to close a transaction, thereby increasing the likelihood that the Debtor will receive the best possible consideration for the Purchased Assets by helping ensure a competitive and fair bidding process.

24.     For reasons explained elsewhere in this Motion, the Debtor believes the sale of the Purchased Assets must occur quickly to maximize value in this chapter 11 case and that extended time spent in chapter 11 increases the risk of business loss and value deterioration. Absent a reasonably prompt sale pursuant to the procedures and timelines proposed, the Debtor believes that the going-concern value of the Purchased Assets will be significantly compromised. The Debtor further believes that a targeted sale process is most likely to achieve the highest and best price for the Purchased Assets and will do so in an efficient and timely manner, enabling the Purchased Assets to emerge successfully from this case.  The Debtor respectfully submits that the relief sought by this Motion is not only reasonable but necessary to maximize the value of its estate for the benefit of the Debtor and its stakeholders.

25.     In addition, the notice procedures described in this Motion and in the Bidding

Procedures Order is intended to adequately advise all potentially interested parties, including

those who have previously expressed an interest in purchasing the Purchased Assets.

26.     The Bidding Procedures were drafted to maximize the value received for the

Purchased Assets.  The process proposed by the Debtor allows for a timely auction process while

providing bidders ample time and information to submit a timely bid.  Along with the marketing

process, the Bidding Procedures are designed to ensure that the Purchased Assets will be sold for

the highest or otherwise best possible purchase price.  The Debtor will subject the value of the

Purchased Assets to a market test and permit all prospective purchasers the opportunity to bid on

the Purchased Assets, thereby subjecting the proposed sale to a market check through the

solicitation of competing bids in a court-supervised auction process.  The Debtor also will have

the flexibility to sell the assets in a single lot or in several lots based on whichever bid or

combination of bids for all the Purchased Assets will maximize value to its estate.

27.     The Debtor has articulated ample business justification for the Sale and, through

the measures and safeguards proposed in the Bidding Procedures, have guaranteed adequate

notice to all creditors and the availability of a hearing on the Sale.  The proposed Sale thus

comports with the requirements of a § 363(b) sale as enunciated by the Seventh Circuit in *In re*

*Schipper.*  933 F.2d at 515.

**D.     The Proposed Sale Is Proposed In "Good Faith" Under Section 363(m) Of The
         Bankruptcy Code**

28.     The Debtor requests that the Court find that the Successful Bidder and/or Back-

Up Bidder is entitled to the benefits and protections provided by section 363(m) of the

Bankruptcy Code in connection with the sale of the Purchased Assets.

29.     Section 363(m) of the Bankruptcy Code provides, in pertinent part:

> The reversal or modification on appeal of an authorization under
> subsection (b) ... of this section of a sale . . . of property does not affect the
> validity of a sale ... under such authorization to an entity that purchased ...
> such property in good faith, whether or not such entity knew of the
> pendency of the appeal, unless such authorization and such sale ... were
> stayed pending appeal.

11 U.S.C. § 363(m).

30.     Section 363(m) protects the purchaser of assets sold pursuant to section 363 from

the risk that it will lose its interest in the purchased assets if the order allowing the sale is

reversed on appeal.  By its terms, section 363(m) applies to sales of interests in tangible assets.

However, some courts have applied the protections of 363(m) to assignments of executory

contracts as well.  *See In re Kmart Corp.*, No. 03 C 698, 2003 WL 1956149, at *3 (Bankr. N.D.

Ill. April 23, 2003) (collecting cases).  As required by section 363(m), the Bidding Procedures

have been proposed in good faith and provide for both the Debtor and any potential purchaser to

act in good faith in negotiating the sale of the Purchased Assets and the assignment of the

Executory Contracts and Unexpired Leases related thereto.  To constitute lack of good faith, a

party's conduct in connection with the sale must usually amount to "fraud, collusion between the

purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other

bidders."  *In re Wieboldt Stores, Inc.*, 92 B.R. 309, 312 n.3 (Bankr. N.D. Ill. 1988) (*quoting In re

Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)); *see also In re Perona Bros.,

Inc.*, 186 B.R. 833, 839 (D.N.J. 1995); *In re Bedford Springs Hotel, Inc.*, 99 B.R. 302, 305

(Bankr. W.D. Pa. 1989).  Due to the absence of a bright line test for good faith, the determination

is based on the facts of each case, concentrating on the "integrity of [an actor's] conduct during

the sale proceedings."  *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (quoting *In

re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1998 (7th Cir. 1978)).

31.     As required by section 363(m), the Bidding Procedures have been proposed in

good faith and provide for both the Debtor and any potential purchaser to act in good faith in negotiating the sale of the Purchased Assets and the assignment of the Executory Contracts and Unexpired Leases related thereto. Although the Bankruptcy Code does not define "good faith purchaser," the Third Circuit, construing section 363(m) of the Bankruptcy Code, has stated that "the phrase encompasses one who purchases in 'good faith' and for 'value.'" *Abbotts Dairies*, 788 F.2d at 147. To constitute lack of good faith, a party's conduct in connection with the sale must usually amount to "fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders." *Id.* (citing *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)); *see also In re Bedford Springs Hotel, Inc.*, 99 B.R. 302, 305 (Bankr. W.D. Pa. 1989); *In re Perona Bros., Inc.*, 186 B.R. 833, 839 (D.N.J. 1995). Due to the absence of a bright line test for good faith, the determination is based on the facts of each case, concentrating on the "integrity of [an actor's] conduct during the sale proceedings." *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1998 (7th Cir. 1978)).

32.    Here, the sale of the Purchased Assets and the assignment and/or transfer of the Executory Contracts and Unexpired Leases, which will be designated by any Successful Bidder, is or will be in good faith.[3] As discussed throughout this Motion, and as will be demonstrated at the Sale Hearing, any sale agreement will be the culmination of a solicitation and negotiation process in which all parties will be represented by counsel. All negotiations have been and will continue to be conducted on an arms length, good faith basis. Moreover, there is no evidence of

---

[3] The Debtor believes that a finding of good faith within the meaning of section 363(m) will be appropriate for the Successful Bidder. Pursuant to the Bidding Procedures, any Successful Bidder will have had to present a proposal in accordance with the Bidding Procedures. Moreover, the Debtor will not choose as the Successful Bidder or Back-Up Bidder any entity whose good faith under section 363(m) can reasonably be doubted, and would be prepared to present the Court with sufficient evidence to allow the Court to find that the "good faith" standard of section 363(m) has been satisfied.

fraud or collusion in terms of the proposed sale.  With respect to the potential bidders, the

Bidding Procedures are designed to ensure that no party is able to exert undue influence over the

process.

33.     Under the circumstances, the Successful Bidder or Back-Up Bidder should be

afforded the protections that section 363(m) provides to a good faith purchaser.  All parties in

interest as described in paragraph 16 will receive notice of the sale proposed herein and will be

provided with an opportunity to be heard.  Additionally, all counterparties to Executory

Contracts and Unexpired Leases will be provided notice of assumption, assignment and/or

transfer and an opportunity to be heard.  The Debtor submits that such notice is adequate for

entry of the Sale Order and satisfies the requisite notice provisions required under sections

363(b) and 365 of the Bankruptcy Code.

**E.     The Proposed Sale Satisfies The Requirements Of Section 363(f) Of The Bankruptcy
        Code**

34.     Under section 363(f) of the Bankruptcy Code, a debtor may sell all or any part of

its property free and clear of any and all liens, claims, or interests in such property if: (a) such a

sale is permitted under applicable non-bankruptcy law; (b) the party asserting such a lien, claim,

or interest consents to such sale; (c) the interest is a lien and the purchase price for the property is

greater than the aggregate amount of all liens on the property; (d) the interest is the subject of a

bona fide dispute; or (e) the party asserting the lien, claim, or, interest could be compelled, in a

legal or equitable proceeding, to accept a money satisfaction for such interest.  *See* 11 U.S.C. §

363(f); *see also In re Zeigler*, 320 B.R. at 387 (noting that section 363(f) of the Bankruptcy Code

is written in the disjunctive; therefore, a court may approve a sale "free and clear" provided at

least one of the subsections is met).  Furthermore, courts have held that they have the equitable

power to authorize sales free and clear of interests that are not specifically covered by section

363(f).  *See, e.g., In re Trans World Airlines, Inc.*, 2001 WL 1820325, at *3, 6 (Bankr. D. Del.

Mar. 27, 2001); *Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor*

*Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987).  Because the Debtor expects that it

will satisfy one or more of the requirements of section 363(f), as will be demonstrated at the Sale

Hearing, approving the sale of the Purchased Assets free and clear of all Interests is warranted.

**F.      Assumption And Assignment Of Executory Contracts And Unexpired Leases
         Should be Approved**

        35.      To facilitate and effectuate the sale of the Purchased Assets, the Debtor seeks

authority to assume, assign and/or transfer various Executory Contracts and Unexpired Leases to

the Successful Bidder or Back-Up Bidder to the extent required by such Successful Bidder or

Back-Up Bidder.  Section 365 of the Bankruptcy Code authorizes a debtor to assume and/or

assign its executory contracts and unexpired leases, subject to the approval of the Court;

provided that the defaults under such contracts and leases are cured and adequate assurance of

future performance is provided.  A debtor's decision to assume or reject an executory contract or

unexpired lease must only satisfy the "business judgment rule" and will not be subject to review

unless such decision is clearly an unreasonable exercise of such judgment.  *See Group of*

*Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.*, 318 U.S. 523 (1943)

(applying Bankr. Act section 77 subsection (b), predecessor to Bankruptcy Code Section 365,

and rejecting test of whether executory contract was burdensome in favor of whether rejection is

within debtor's business judgment); *see also Lubrizol Enter., Inc. v. Richmond Metal Finishers,*

*Inc.*, 756 F.2d 1043, 1046-47 (4th Cir. 1985).

        36.      The meaning of "adequate assurance of future performance" depends on the facts

and circumstances of each case, but should be given "practical, pragmatic construction."  *See*

*Carlisle Homes. Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D. N.J.

1989).  Among other things, adequate assurance may be given by demonstrating the assignee's

financial health and experience in managing the type of enterprise or property assigned.  *In re*

*Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding adequate assurance of future

performance present when the prospective assignee of a lease from the debtor has the financial

resources and has expressed a willingness to devote sufficient funding to the business in order to

give it a strong likelihood of succeeding; "chief determinant of adequate assurance of future

performance is whether rent will be paid").

37.     The Successful Bidder or Back-Up Bidder will likely want an assignment of

certain executory contracts and unexpired leases related to the Purchased Assets.  To the extent

Executory Contracts and Unexpired Leases are identified for assumption, assignment and/or

transfer, the Debtor believes that it can and will demonstrate that all requirements for

assumption, assignment and/or transfer of the Executory Contracts and Unexpired Leases will be

satisfied at the Sale Hearing.  The Debtor, as required by the Bidding Procedures, will evaluate

the financial wherewithal of all potential bidders before qualifying such bidders to bid for the

Purchased Assets.  Further, for the reasons stated throughout this Motion, the Debtor, in

exercising its sound business judgment, believes that selling the Purchased Assets and assuming,

assigning and/or transferring to the Successful Bidder or Back-Up Bidder the Executory

Contracts and Unexpired Leases would be in the best interests of its estate.  Moreover, the

Debtor will provide all parties to the Executory Contracts and Unexpired Leases an opportunity

to be heard.

38.     Specifically, the Debtor will serve the Notice of Assumption and Assignment on

or before three business days after entry of the Bidding Procedures Order on the non-debtor

parties to the Executory Contracts and Unexpired Leases.  The Notice of Assumption and

Assignment will, among other things, identify respective Cure Amounts, if any. The Debtor requests that unless the non-debtor party to an Executory Contract and Unexpired Lease files and serves a Cure Amount/Assignment Objection setting forth the Claimed Cure Amount or objecting to an assumption, assignment and/or transfer to the Successful Bidder or Back-Up Bidder on or before the Cure/Assignment Objection Deadline, such non-debtor party should: (a) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Executory Contract and Unexpired Lease and the Debtor shall be entitled to rely solely upon the Cure Amount; and (b) if the Executory Contract or Unexpired Lease is identified as a Purchased Asset by the Successful Bidder and/or the Back-Up Bidder, be deemed to have consented to the assumption, assignment and/or transfer of such Executory Contract and Unexpired Lease and shall be forever barred and estopped from asserting or claiming against the Debtor, the Successful Bidder, the Back-Up Bidder or any other assignee of the relevant Executory Contract and Unexpired Lease that any additional amounts are due or defaults exist, or conditions to assumption, assignment and/or transfer must be satisfied, under such Executory Contract. Notwithstanding the foregoing, as provided below, each non-debtor party shall retain the right to object to the assumption, assignment or transfer of its Executory Contract and Unexpired Lease, based solely on the issue of whether the Successful Bidder or Back-Up Bidder can provide adequate assurance of future performance as required by Section 362 of the Bankruptcy Code.

39.    Within two business days after the conclusion of the auction for the Purchased Assets, the Debtor will serve a notice identifying the Successful Bidders to the non-debtor parties to the Executory Contracts and Unexpired Leases that have been identified in such Successful Bid. The Debtor requests that objections by a non-debtor party to the Executory Contracts and

Unexpired Leases to the assumption, assignment and/or transfer of such Executory Contract and

Unexpired Lease solely on the issue of whether the Successful Bidder or Back-Up Bidder can

provide adequate assurance of future performance as required by section 365 of the Bankruptcy

Code be filed and served on or before the Adequate Assurance Objection Deadline.

40.      Thus, the Debtor requests that the assumption, assignment and/or transfer of the

Executory Contracts and Unexpired Leases be approved.

**G.      Relief From The Ten-Day Waiting Periods Under Bankruptcy Rules 6004(h) And 6006(d) is Appropriate**

41.      Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or

lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the

court orders otherwise."  Similarly, Bankruptcy Rule 6006(d) provides that an "order authorizing

the trustee to assign an executory contract or unexpired lease . . . is stayed until the expiration of

14 days after the entry of the order, unless the court orders otherwise."  The Debtor requests that

the Bidding Procedures Order and the Sale Order be effective immediately by providing that the

fourteen (14) day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.

42.      The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient

time for an objecting party to appeal before an order can be implemented.  *See* Advisory

Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d).  Although Bankruptcy Rules

6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should

"order otherwise" and eliminate or reduce the ten-day stay period, Collier on Bankruptcy

suggests that the 14 day stay period should be eliminated to allow a sale or other transaction to

close immediately "where there has been no objection to the procedure."  10 COLLIER ON

BANKRUPTCY ¶ 6004.11 (16th ed. 2012).  Furthermore, if an objection is filed and overruled, and

the objecting party informs the court of its intent to appeal, the stay may be reduced to the

amount of time actually necessary to file such appeal.  *See Id.*

43.     Accordingly, the Debtor hereby requests that the Court waive the fourteen-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

## NOTICE

44.     Notice of this Motion has been given to: (a) the Office of the United States Trustee; (b) MB Financial Bank, N.A.; (c) all known parties with liens of record on assets of the Debtor as of the Petition Date; (d) the Official Committee of Unsecured Creditors; (e) the Internal Revenue Service; (f) the Illinois Department of Revenue; and (g) any parties that filed an appearance in this case or otherwise requested notices.  In addition, the Notice of Auction and Sale Hearing, the Bidding Procedures Order, and the Notice of Assumption and Assignment will be served as set forth in paragraphs 17 and 18 above.  In light of the nature of the relief requested, the Debtor submits that no further notice is required.

WHEREFORE, the Debtor respectfully requests: (a) entry of the proposed Bidding Procedures Order, substantially in the form attached hereto as Exhibit A; (b) entry of the Sale Order; and (c) such other and further relief as the Court deems just and proper.

Dated: November 2, 2015                       Respectfully submitted,

                                    **LB STEEL, LLC**,

                                    By: */s/ Daniel A. Zazove*
                                         PERKINS COIE LLP
                                         Daniel A. Zazove
                                         David J. Gold
                                         131 S. Dearborn Street, Suite 1700
                                         Chicago, Illinois 60603-5559
                                         Telephone:  (312) 324-8400
                                         Facsimile:  (312) 324-9400

                                    *Proposed Attorneys for the Debtor*

## <u>CERTIFICATE OF SERVICE</u>

Daniel A. Zazove, an attorney, certifies that on November 2, 2015, he caused the foregoing *Debtor's Motion For Orders: (A)(I) Approving Bidding Procedures in Connection With the Sale of All Or Substantially All Assets of the Debtor, (II) Scheduling an Auction and Hearing to Consider the Sale of Assets, and (III) Approving the Form and Manner of Notice of the Sale; and (B)(I) Authorizing and Approving the Sale of Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, and (II) Authorizing and Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* to be filed electronically with the Court and served via operation of the Court's electronic filing system to the ECF registered parties listed below, and served as otherwise indicated on the subsequent service list below.

**Via ECF Notification:**

David A Agay on behalf of Interested Party LB Industries, Inc.
dagay@mcdonaldhopkins.com, mbrady@mcdonaldhopkins.com; mgupta@mcdonaldhopkins.com;
bkfilings@mcdonaldhopkins.com

Jeffrey E Altshul on behalf of Creditors CenterPoint Energy Services, Inc., FirstEnergy Solutions Corp., Creditor Ohio Edison Company, Creditor Westar Energy, Inc.
jaltshul@carlsondash.com, kidstein@carlsondash.com

Kurt M. Carlson on behalf of Creditors CenterPoint Energy Services, Inc., FirstEnergy Solutions Corp., Creditor Ohio Edison Company, Creditor Westar Energy, Inc.
kcarlson@carlsondash.com, knoonan@carlsondash.com; bmurzanski@carlsondash.com

Barry A Chatz on behalf of Creditor MB Financial Bank, N.A.
bachatz@arnstein.com, jbmedziak@arnstein.com

Rosanne Ciambrone on behalf of Creditor Committee The Official Committee of Unsecured Creditors'
rciambrone@duanemorris.com, jkahane@duanemorris.com; rpdarke@duanemorris.com

William Cross on behalf of Creditor Walsh Construction Company
wcross@fslegal.com

Michael K Desmond on behalf of Creditor Walsh Construction Company
mdesmond@fslegal.com, dorisbay@fslegal.com

Joshua A Gadharf on behalf of Interested Party LB Industries, Inc.
jgadharf@mcdonaldhopkins.com, mhdocket@mcdonaldhopkins.com

David J. Gold on behalf of Debtor LB Steel, LLC
dgold@perkinscoie.com, jmatamoros@perkinscoie.com, ecf-f3d8ba2b0968@ecf.pacerpro.com

David A. Golin on behalf of Creditor MB Financial Bank, N.A.
dagolin@arnstein.com, mgonzalez@arnstein.com

Patrick S Layng
USTPRegion11.ES.ECF@usdoj.gov

Kevin H Morse on behalf of Creditor MB Financial Bank, N.A.
khmorse@arnstein.com

John S Mrowiec on behalf of Creditor Conway & Mrowiec
jsm@cmcontractors.com

John R Weiss on behalf of Creditor Committee The Official Committee of Unsecured Creditors'
jrweiss@duanemorris.com

Samuel C. Wisotzkey on behalf of Creditor Scot Forge Company
swisotzkey@kmksc.com, kmksc@kmksc.com

**Served as indicated:**

| Name | Party Type | Fax No. or Email | Type of Service |
|------|------------|-----------------|-----------------|
| Office of the U.S. Trustee<br>Attn Kimberly Bacher<br>219 S Dearborn St, Room 873<br>Chicago, IL 60604 | U.S. Trustee | USTPRegion11.es.ecf@usdoj.gov | ECF and Messenger |
| Evraz North America<br>Attn Jim Torongo<br>200 E Randolph<br>Chicago, IL 60601 | Committee Member | Jim.Torongo@evrazna.com | Messenger |
| SSAB Americas<br>Attn John Thompson<br>801 Warrenville Rd, Ste 800<br>Lisle, IL 60532 | Committee Member | 630-810-4608<br>Philip.Caldwell@ssab.com | FedEx |
| Janco Steel<br>Attn Terrie Demelo<br>925 Arvin Ave<br>Stoney Creek<br>Ontario Canada L8E5N9 | Committee Member | 905-643-3585<br>Tdemelo@jancosteel.com | FedEx |
| Welding Industrial Supply<br>Attn Craig Devries<br>2200 N Western Ave<br>Chicago, IL 60647 | Committee Member | 773-384-7273<br>Cdevries@wisconline.com | FedEx |
| Russell R. Johnson III<br>Russell R. Johnson III, PLC<br>2258 Wheatlands Dr.<br>Manakin-Sabot, VA  23103 | Rule 2002 - Attorney for CenterPoint Energy, et al. | | U.S. Mail |

**Other Purported Secured Creditors**

| Name | Party Type | Fax No. or Email | Type of Service |
|---|---|---|---|
| American National Bank<br>8990 West Dodge Road<br>Omaha, NE 68114 | UCC | | U.S. Mail |
| Yamazen Inc.<br>735 E. Remington Rd.<br>Schaumburg, IL 60173 | Additional notice party | | U.S. Mail |
| Atlas Copco Cust Finance USA 34 Maple Ave<br>PO Box 2028<br>Pine Brook, NJ 07058 | UCC | | U.S. Mail |
| Bank of the West<br>7101 College Blvd, Ste 550<br>Overland Park, KS 66210 | UCC | | U.S. Mail |
| Caterpillar Inc.<br>100 N.E. Adams St<br>Peoria, IL 61629 | UCC | | U.S. Mail |
| JPMorgan Chase Bank, NA<br>Mail Code IL1-0199<br>300 S Riverside Plaza<br>Chicago, IL 60670 | UCC | | U.S. Mail |
| NMHG Financial Services, Inc.<br>PO Box 35701<br>Billings, MT 59107 | UCC | | U.S. Mail |
| NMHG Financial Services Inc<br>201 Merritt 7<br>Norwalk, CT 06851 | Additional notice address | | U.S. Mail |
| Trumbull County Auditor<br>Real Estate Tax Div.<br>160 High St., NW<br>Warren, OH 44481 | Real Estate Tax Authority | | U.S. Mail |
| De Lage Landen Financial Svc<br>1111 Old Eagle School Rd.<br>Wayne, PA 19087 | Copiers and Machinery leases | | U.S. Mail |
| Commercial Capital Co, LLC<br>8215 Melrose Dr., Ste 100<br>Lenexa, KS 66214 | Copier lease | | U.S. Mail |

**<u>Via U.S. Mail</u>**

| Internal Revenue Service<br>Centralized Insolvency Operations<br>PO Box 7346<br>Philadelphia, PA 19101-7346 | Illinois Department of Revenue<br>Bankruptcy Section<br>PO Box 64338<br>Chicago, IL 60664-0338 |
|---|---|

*/s/ Daniel A. Zazove*